# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| THE STATE OF WASHINGTON,<br><br>                  Respondent,<br><br>     v.<br><br>SIDNEY GUY SMITH,<br><br>                  Appellant. | No. 85196-9-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

MANN, J. — Sidney Smith pleaded guilty to two counts of vehicular assault and was sentenced using an offender score calculated to include a prior conviction of possession of a controlled substance. Convictions for possession of a controlled substance have since been invalidated by State v. Blake, 197 Wn.2d 170, 481 P.3d 521 (2021). Smith unsuccessfully moved for resentencing under CrR 7.8 arguing his offender score was incorrectly calculated to include the possession conviction. On appeal, Smith argues that he is entitled to resentencing under the plain language of CrR 7.8(c), and that his miscalculated score amounts to a fundamental defect resulting in a complete miscarriage of justice. We affirm.

I

On January 1, 2013, Smith was driving a stolen car at a high rate of speed while evading police when he crossed into an oncoming lane and struck another vehicle head

on. The occupants of the other vehicle, three sisters, suffered serious injuries including a fractured leg and a fractured pelvis. A subsequent blood test revealed Smith had consumed methamphetamine and cannabis. Smith was charged with two counts of vehicular assault for driving while under the influence. Such an assault is considered a "most serious offense" and is a strike offense under Washington's Persistent Offender Accountability Act. RCW 9.94A.030(32)(p), .030(37), .570; State v. Reynolds, 2 Wn.3d 195, 200, 535 P.3d 427 (2023).

Smith was previously convicted of several felonies in California including second degree robbery and second degree rape—both considered strike offenses in 2015—and one conviction for possession of a controlled substance. In light of his criminal history, Smith was facing a third strike and punishment of life without the possibility of parole if he proceeded to trial. Instead, Smith pleaded guilty to two counts of the non-strike crime of vehicular assault with disregard for the safety of others.

Smith's offender score of 9 was calculated by adding his prior seven felony convictions and the two vehicular assault offenses. Using that score, the standard range on each count was 51 to 68 months with a maximum of 120 months. As part of the felony plea agreement, however, Smith agreed that an exceptional sentence of 190 months was justified:

> There are substantial and compelling reasons, considering the purposes of the Sentencing Reform Act (SRA),[1] that justify an exceptional sentence. Specifically, to promote [j]ustice and respect for the law, to have sentences commensurate with similar offenders, to protect the public, to provide opportunities for self-improvement to offenders, to ensure the frugal use of State and [l]ocal resources, and to reduce the risk of reoffending. RCW 9.94A.535.

---

[1] Sentencing Reform Act of 1981, ch. 9.94A RCW.

The three sisters each submitted victim impact statements to the trial court to consider for sentencing which described their respective experiences of ongoing physical and emotional injuries suffered as a result of the collision. On February 6, 2015, the trial court sentenced Smith to two consecutive terms of 95 months. The court explained its reasoning for the sentence:

> Well, the Court was affected, I have to say, by the letters by the three young women who were injured in this and the seriousness of their injuries. I do think that the way the parties worked through a solution to this case, considering Mr. Smith's history, considering the seriousness of the injuries and considering the type of criminal conduct, is an appropriate resolution of the case. I do find that the agreed aggravator does exist, and the Court will adopt that as the parties have submitted, and I will impose the exceptional sentence of 95 months on each count to run consecutive, with community custody for 12 months.

In December 2022, Smith filed a CrR 7.8 motion for resentencing. Smith argued that his motion was timely and that, following Blake, his offender score was incorrectly calculated based on an unconstitutional felony conviction for possession of a controlled substance. The State responded that the motion was untimely, and that Smith failed to make a substantial showing that he was entitled to relief under CrR 7.8(c). The State also asserted that Smith failed to establish he was entitled to relief under CrR 7.8(b) because the judgment was not void under subsection (b)(4). In reply, Smith asserted he was entitled to relief under the CrR 7.8(b)(5) "catchall" provision because the miscalculation resulted in a fundamental defect.

The trial court found that Smith's motion was timely under RCW 10.73.090 and that Smith made a substantial showing for relief under CrR 7.8(c)(2). As to relief on the merits, the trial court determined the judgment was not void by inclusion of the

possession offense in calculating the offender score and thus, Smith was not entitled to relief under CrR 7.8(b)(4). The trial court also concluded that, under CrR 7.8(b)(5), Smith failed to show the outcome would more likely than not have been different absent the incorrect score or that the trial court would have imposed a different sentence had the standard range been properly calculated. Accordingly, the trial court denied Smith's motion for resentencing.

Smith timely appealed.

II

We review a trial court's denial of a CrR 7.8 motion for abuse of discretion. State v. Frohs, 22 Wn. App. 2d 88, 92, 511 P.3d 1288 (2022). "A trial court abuses its discretion if its decision rests on untenable factual grounds or was made for untenable legal reasons." Frohs, 22 Wn. App. 2d at 92.

A

We first address whether Smith's CrR 7.8 motion was timely. A CrR 7.8 motion for resentencing is a collateral attack. State v. Molnar, 198 Wn.2d 500, 509, 497 P.3d 858 (2021). A collateral attack of a judgment and sentence must be brought within one year after the judgment becomes final—if the judgment is valid on its face and was entered by a court of competent jurisdiction. RCW 10.73.090(1).[2]

If a trial court determines that the judgment and sentence is valid on its face, then a CrR 7.8 motion brought more than one year after the final judgment is untimely and it

---

[2] Under RCW 10.73.090(1): "No petition or motion for collateral attack on a judgment and sentence in a criminal case may be filed more than one year after the judgment becomes final if the judgment and sentence is valid on its face and was rendered by a court of competent jurisdiction."

must be transferred to this court without reaching the merits.  Molnar, 198 Wn.2d at 509;

CrR 7.8(c)(2).

A sentence is invalid on its face, however, "if the sentencing court lacked or

exceeded its statutory authority to impose the sentence."  In re Pers. Restraint of Dove,

196 Wn. App. 148, 156, 381 P.3d 1280 (2016).  "A sentencing court 'acts without

statutory authority' when it imposes a sentence based on an offender score that was

miscalculated upward."  In re Pers. Restraint of Fletcher, 3 Wn.3d 356, 373, 552 P.3d

302 (2024) (quoting In re Pers. Restraint of Goodwin, 146 Wn.2d 861, 868, 50 P.3d 618

(2002)).  And even if a defendant has agreed to an exceptional sentence, "the

sentencing judge remains the one responsible for deciding whether to depart from the

standard range and, if so, by how much."  Fletcher, 3 Wn.3d at 374.

Smith's offender score was miscalculated upward.  Thus, the judgment and

sentence is invalid on its face.  Because the judgment and sentence is invalid, the one-

year time bar does not apply and the trial court properly retained Smith's CrR 7.8 motion

as timely.

B

Smith argues that because his motion was timely, the plain language of CrR

7.8(c) entitles him to relief and resentencing is required.  We disagree.

If the trial court determines that a CrR 7.8 motion is not barred as untimely by

RCW 10.73.090, then the trial court must decide:

> either (i) the defendant has made a substantial showing that they are
> entitled to relief or (ii) resolution of the motion will require a factual
> hearing.  A defendant is entitled to relief under subsection (i) where the
> person (A) is serving a sentence for a conviction under a statute
> determined to be void, invalid, or unconstitutional by the United States

> Supreme Court, the Washington Supreme Court, or an appellate court where review either was not sought or was denied or (B) is serving a sentence that was calculated under RCW 9.94A.525 using a prior or current conviction based on such a statute.

CrR 7.8(c)(2).

Contrary to Smith's assertion, the plain language of CrR 7.8(c)(2) does not entitle him to relief. CrR 7.8(c)(2) provides the procedure a trial court must follow when presented with a CrR 7.8 motion, and then, once those procedural requirements are satisfied, CrR 7.8(b) provides the basis for deciding whether Smith is entitled to relief on the merits. See Molnar, 198 Wn.2d at 509 (describing procedures required by CrR 7.8(c) and explaining that a decision on the merits can be made only after the procedural requirements have been met).

Smith is not entitled to relief based on the plain language of CrR 7.8(c).

C

Once the procedural requirements of CrR 7.8(c) are satisfied, a trial court may provide relief on the merits if the judgment is void or for any other reason justifying relief. CrR 7.8(b)(4), (5). "A void judgment is one entered by a court 'which lacks jurisdiction of the parties or of the subject matter, or which lacks the inherent power to make or enter the particular order involved.'" State v. Zavala-Reynoso, 127 Wn. App. 119, 122, 110 P.3d 827 (2005) (quoting Dike v. Dike, 75 Wn.2d 1, 7, 448 P.2d 490 (1968)). In Zavala-Reynoso, the defendant argued his sentence was void because it was based on an incorrect offender score. The court decided the defendant's argument fell outside subsection (b)(4) because he did not contest the trial court's jurisdiction or inherent power. Zavala-Reynoso, 127 Wn. App. at 123.

Smith does not argue that the trial court lacked jurisdiction or the inherent power to enter the judgment and sentence. Below, Smith relied on Frohs to argue that Smith's miscalculated score rendered the judgment void. Frohs is distinguishable. In that case, the defendant did not seek resentencing but to vacate his conviction for possession because it was void under Blake. Frohs, 22 Wn. App. 2d at 96-97. Here, Smith is not seeking to vacate his possession conviction but is seeking resentencing for a different conviction. Smith provides no argument to persuade that the trial court abused its discretion by denying relief under subsection (b)(4).

The "catchall" provision of CrR 7.8(b)(5) allows for relief in situations not covered by other subsections of the rule and in circumstances where the interests of justice most urgently require. State v. Lamb, 175 Wn.2d 121, 128, 285 P.3d 27 (2012). And a defendant seeking relief by collateral attack must show either that a constitutional error resulted in actual prejudice or that a nonconstitutional error was a fundamental defect resulting in a complete miscarriage of justice. State v. Pascuzzi, 29 Wn. App. 2d 528, 533, 541 P.3d 415 (2024). Miscalculation of an offender score is a nonconstitutional error. Pascuzzi, 29 Wn. App. 2d at 533-34 (citing Goodwin, 146 Wn.2d at 867). At oral argument, the parties agreed that the collateral attack standard falls within subsection (b)(5).[3] Accordingly, Smith needed to show, by a preponderance of the evidence, that his miscalculated score amounted to a fundamental defect resulting in a complete miscarriage of justice. In re Pers. Restraint of Sylvester, 24 Wn. App. 2d 769, 777, 520 P.3d 1123 (2022).

---

[3] Wash. Ct. of Appeals oral argument, State v. Smith, No. 85196-9 (Sept. 25, 2024) at 3 min., 9 sec.; 9 min., video recording by TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-1-court-of-appeals-2024091264/?eventID=2024091264

While "there are few cases elaborating on the 'complete miscarriage of justice' standard . . . [I]t is well established that the standard . . . is more demanding than the 'actual and substantial prejudice' standard for constitutional error, which already presents a high barrier to relief." State v. Drake, 32 Wn. App. 2d 395, 556 P.3d 170, (2024). A "defendant may not rely on bald assertions and conclusory allegations" to prove a complete miscarriage of justice. Drake, 32 Wn. App. 2d at 396.

Here, the trial court concluded that Smith failed to establish prejudice and denied relief under CrR 7.8(b)(5):

> There is no evidence in the record that the judge in this case would have imposed a lower sentence had the offender score been an 8, rather than a 9. There is no evidence that the judge even considered imposing a standard range sentence. A vague reference to Defendant's criminal history is not enough. This was charged as a three-strikes case, where ultimately the Court found that "the parties agreed to amend the charges to a non-strike charges and recommended an exceptional sentence above the standard range." Based on these findings, the Court concluded that "justice was best served by an exceptional sentence above the standard range." The Court's findings are adequate to support the exceptional sentence. These facts distinguish this case from other cases where resentencing was granted, including State v. Fletcher, 19 Wn. App. 2d 566, [497 P.3d 886] (2021), [State v.] Chambers, 176 Wn.2d 573, [293 P.3d 1185] (2013), [Goodwin, 146 Wn.2d 861], and [State v.] Parker, 132 Wn.2d [182, 937 P.2d 575] (1997).
>
> . . . Mr. Smith has not pointed to any evidence in the record suggesting that the trial court would not have sentenced Mr. Smith the same term of confinement with a corrected offender score. A vague reference to criminal history in light of the Court's detailed findings in this three-strikes case is not enough.

Smith argues that the record is not "expressly clear" that the trial court would have imposed the same sentence with a correct offender score because it is likely the judge relied in part on the incorrect standard range. Smith relies on Parker, 132 Wn.2d at 192. But Parker is distinguishable because it involved a direct appeal of sentencing,

not a collateral attack, and the court applied a constitutional harmless error standard which is not at issue here.

Smith also relies on Sylvester and Fletcher. In Sylvester, the defendant pleaded guilty to four crimes and his offender score of 7 included one point for possession of a controlled substance. 24 Wn. App. 2d at 771. The trial court imposed low-end standard range sentences for each charge and required the defendant to serve them consecutively resulting in an exceptional sentence of 133 months. Sylvester, 24 Wn. App. 2d at 773. Following Blake, the defendant unsuccessfully sought resentencing under an offender score that did not include the point for the possession conviction. On appeal, the court found the evidence showed that the trial court would not have imposed the same sentence with a corrected score:

> Although Sylvester pleaded guilty and stipulated to an exceptional sentence, the result was four consecutive sentences, each at the bottom of the standard range, including one for 0 days. As discussed above, sentencing Sylvester in the same manner with the corrected offender score would reduce his term of confinement by 32 months. Reducing the offender score would lower the bottom of the standard range for each conviction, and the low end of the range was a central factor in the negotiated plea agreement and the trial court's sentence.

Sylvester, 24 Wn. App. 2d at 778. The court concluded that Sylvester demonstrated a complete miscarriage of justice and remanded for resentencing. Sylvester, 24 Wn. App. 2d at 778.

In Fletcher, a recent and similar case, our Supreme Court addressed a collateral attack based on a miscalculated offender score. 3 Wn.3d at 356. At issue was a miscalculated standard range that was more than three times what was allowed under the correct score. Fletcher, 3 Wn.3d at 373. The incorrect score of 8 resulted in a

standard range of 53 to 70 months while the correct score of 4 resulted in a standard range of 15 to 20 months. Fletcher, 3 Wn.3d at 365. The court held that the "dramatically" incorrect offender score constituted a complete miscarriage of justice:

> In Fletcher's case . . . the exceptional sentence was based on improper sentencing calculations, the mistake had a dramatic impact on the standard sentencing range, and there is a high probability that the mistake affected the original sentence. It is noteworthy that the resentencing court, faced with correct information, imposed a far lower sentence than the original sentencing court, which was using incorrect information.

Fletcher, 3 Wn.3d at 381. The court concluded that "such significant sentencing calculation errors" resulted in a fundamental defect and remanded for resentencing based on the correct offender score. Fletcher, 3 Wn.3d at 383 (citing Goodwin, 146 Wn.2d at 868).

In Goodwin, the defendant's criminal history used to calculate his offender score of 4 included three juvenile convictions and one adult conviction. The trial court imposed a sentence at the high end of the standard range. Goodwin, 146 Wn.2d at 864. Goodwin filed a personal restraint petition seeking to vacate the sentence and argued that his offender score was miscalculated because his three "washed out" juvenile convictions should not have been counted. Our Supreme Court agreed that his sentence exceeded what was statutorily permitted and remanded for resentencing. Goodwin, 146 Wn.2d at 875-76; 877-78.

Here, Smith's incorrect score resulted in a standard range of 51 to 68 months while under a correct score of 8 the standard range is 43 to 57 months. RCW 9.94A.510. But unlike Goodwin, Smith received an exceptional sentence not a standard range sentence. Accordingly, the trial court had discretion, within the parameters of the

SRA, in departing from the standard range and imposing the exceptional sentence. Further, unlike Sylvester, the miscalculated standard range was not a central factor in the negotiated plea agreement and there is no evidence that the trial court expressly relied on the incorrect standard range when it imposed the two consecutive 95-month terms. We agree with the trial court that a vague reference to Smith's criminal history is not enough. There is no evidence that the correct score would have altered Smith's sentence.

Additionally, the incorrectly calculated range overlaps with the correct range with the difference between the high end of the ranges and the low end of the ranges being less than one year. The number of months between the correct range and the exceptional sentence is not significantly different from the number of months between the incorrect range and the exceptional sentence. Such a miscalculation is not so dramatic or egregious as the miscalculation in Fletcher where the difference between ranges was several years. Here, the trial court based the exceptional sentence on the seriousness of the crime, the impact on the victims, and the stipulated aggravating factors. There is no evidence that the trial court would have decided differently had Smith's offender score been calculated correctly.

Smith failed to establish a fundamental defect resulting in a complete miscarriage of justice. Thus, the trial court did not abuse its discretion by denying Smith's motion.

Affirmed.[4]

_Mann, J._

WE CONCUR:

_Feldman, J._                    _Smith, C.J._

---

[4] Smith also argues, for the first time, that the plea agreement was made on an incorrect presumption because in 2021 the Washington Legislature removed second degree robbery from the list of strike offenses and made the change retroactive. Because our review is limited to whether the trial court's denial of Smith's CrR 7.8 motion was an abuse of discretion, we do not consider a challenge to the underlying judgment and sentence raised for the first time in a direct appeal from the denial of that motion. See State v. Larranaga, 126 Wn. App. 505, 509, 108 P.3d 833 (2005); State v. Gaut, 111 Wn. App. 875, 881-82, 46 P.3d 832 (2002).